## UNION PETROLEUM S. S. CO. v. EDWARDS, Collector of Internal Revenue.*

(Circuit Court of Appeals, Second Circuit. April 6, 1925.)

No. 308.

Internal revenue ☞9—Capital stock originally invested in vessel held to be "invested capital," within Revenue Act; "earned surplus;" "actual cash paid in;" "cash value of tangible property paid in."

Where British corporation, to avoid statute regarding transfers of American vessels to foreign corporations, purchased for $1,500,000 entire capital stock of $600,000 of state corporation, which represented investment of latter in American steamship, its "invested capital," within Revenue Act 1917, § 207 (Comp. St. 1918, § 6336⅜h), was substantially the amount originally put into purchase of the vessel, and not the sum paid for capital stock; enhanced value of shares not being "earned surplus," nor "actual cash paid in," nor "cash value of tangible property paid in," within Revenue Act.

[Ed. Note.—For other definitions, see Words and Phrases, First Series, Surplus Earnings; First and Second Series, Capital Invested; Cash Value.]

In Error to the District Court of the United States for the Southern District of New York.

Action by the Union Petroleum Steamship Company against William H. Edwards, Collector of Internal Revenue, to recover excess profits tax alleged to have been illegally collected. Verdict was directed against plaintiff, and it brings error. Judgment affirmed.

Action is for the recovery of excess profit taxes alleged to have been illegally collected. Plaintiff is a corporation of Delaware, organized in 1914, with a capital stock of $600,-000, which represented the investment of the company organizers in the steamship Westwego. During the World War the price of shipping rapidly rose, and in March, 1916, plaintiff offered the Westwego for sale at $1,500,000.

The Anglo-American Oil Company (a British corporation) was willing to buy at about the figure named, and when the price

*Certiorari denied 45 S. Ct. 640, 69 L. Ed. —.

was agreed upon the intent of Anglo-American Company was to take over the vessel itself by an ordinary bill of sale. But the Westwego was a vessel of the United States, wherefore it was thought that a foreign corporation could not lawfully take title. Plaintiff's stock was all owned or controlled by one man, and the arrangement finally made was that the entire stock issue of plaintiff was sold by this sole shareholder to Anglo-American Company, or its nominees, for what was in the minds of the parties the purchase price of the Westwego. Then plaintiff, as a subsidiary of the Anglo-American Company, continued to hold legal title to the ship, and to be subject to such taking statutes as the United States might enact.

Subsequently there was enacted the Revenue Act of 1917 (40 Stat. 300 [Comp. St. 1918, § 6336⅜a et seq.]), and plaintiff became subject to the "excess profits tax" under which it was necessary to ascertain the "invested capital" of plaintiff, in order to establish the relation between such capital and the income derived presumably from the same. The statute (section 207) contains a statutory definition of invested capital of corporations. The words here important are that such capital is—

"(1) Actual cash paid in; (2) the actual cash value of tangible property paid in other than cash, for stock or shares in such corporation or partnership, at the time of such payment (but in case such tangible property was paid in prior to January first, nineteen hundred and fourteen, the actual cash value of such property as of January first, nineteen hundred and fourteen, but in no case to exceed the par value of the original stock or shares specifically issued therefor); and (3) paid in or earned surplus and undivided profits used or employed in the business, exclusive of undivided profits earned during the taxable year. * * * *"

The Treasury Department held that plaintiff's invested capital was substantially the $600,000 originally put into the purchase of the Westwego; plaintiff's contention was and is that the business nature of the transaction should be considered, the position of the Anglo-American Company as the real party in interest recognized, the fiction of corporate ownership in plaintiff disregarded, and invested capital for purposes of taxation be taken at what in business parlance it had cost Anglo-American Company to get the Westwego. The department assessed tax on its own theory, plaintiff paid under protest, and brought this action to recover.

At trial verdict was directed against plaintiff, which brought this writ.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Delbert M. Tibbetts, of New York City, of counsel), for plaintiff in error.

Thomas J. Crawford, Asst. U. S. Atty., of New York City, opposed.

Before ROGERS, HOUGH, and HAND, Circuit Judges.

PER CURIAM. However hard this case may appear to some, we are unable to perceive any legal merit in plaintiff's contentions. If it had been able to take title to the Westwego, this British corporation would have been obliged pro tanto at least to submit to taxation by the United States, and non constat that its condition would have been any better than it is now.

What was done was deliberate, including the maintenance of an American corporation to own the American ship; and it will not do to call this legal scheme a fiction. It may be called a disguise; the Westwego undoubtedly became a "whitewashed" ship, but the machinery of ownership was designed and important, and in no sense fictitious. The object was to avoid one statute, that regarding vessel transfers, and if, in such avoidance, another and quite different statutory reef is encountered, the matter is only hard in the sense that it is one of the accidents of financial navigation.

What is really the matter here is that the Westwego came under Anglo-American control in 1916, when few, if any, men foresaw the war strain of taxation that was encountered in 1917. The corporate apparatus originally created before 1916, and continued of a purpose by Anglo-American Company, is too rigid to be disregarded. The taxable entity is plaintiff, and no other; it is impossible to look beyond or behind that artificial person. What is taxable is plaintiff's capital, not that of any other; and what plaintiff is really asking is that we regard as its invested capital, not what went into its own coffers or property, but the money of Anglo-American Company, which went into the pockets of the original shareholders in plaintiff corporation.

Seeing, therefore, nothing in the nature of things why plaintiff should not respond to the tax according to its own corporate financial history, which contains no reference to the sale of its share-stock by its original shareholders, we turn to the statute, supra, and find it impossible to consider what the Anglo-American paid, either as "actual cash paid in," or the "cash value of tangible property paid in," or "earned surplus and undivided profits." This is because Anglo-American never paid anything in to the plaintiff; it only bought from third persons an interest in the plaintiff, and certainly the enhanced value of plaintiff's shares cannot be called "earned surplus."

On authority, La Belle Iron Works v. United States, 256 U. S. 377, 41 S. Ct. 528, 65 L. Ed. 998, is conclusive; and see especially exposition of the above statutory definition of invested capital at page 388.

Judgment affirmed, with costs.